HIGGINBOTHAM, J.
|2In this medical malpractice action, plaintiff, Daniiy Penn, appeals the district court’s grant of a motion to strike and motion for summary judgment in favor of the defendant, Our Lady of the Lake Regional Medical Center (“OLOL”).

FACTS AND PROCEDURAL HISTORY

On October 28, 2010, plaintiff consulted Dr. Carl Luikart due to fever and night sweats after a colonoscopy performed on September 30, 2010. Plaintiff was admitted to OLOL on October 29, 2010, and treated for possible Enterococcal Endo-carditis. Plaintiff was treated with antibiotics, including Gentamicin, and he was discharged on November 1, 2010. After discharge, CarePoint Partners of Louisiana, L.L.C. (“CarePoint”) administered plaintiffs home infusion treatments of Gentamicin.
*28 Plaintiff complained of dizziness, nausea, and symptoms of vertigo from November 17, 2010, through December 3, 2010. Dr. Luikart and CarePoint were notified of plaintiffs complaints, and his Gentamicin was discontinued on December 3, 2010. On December 20, 20Í0, plaintiff was readmitted to OLOL and observed by Drs. John McLachlan and William Gladney. After his discharge on December 23, 2010, he began treatment with Dr. Moisés Arria-ga and was diagnosed with Dandy’s Syndrome.
In July 2011, plaintiff filed a medical malpractice complaint with the Patient Compensation Fund alleging malpractice and contending that his injuries would not have occurred but for the negligence of Dr. Luikart, OLÓL, and CarePoint and that there were “serious deviations in the standards of care relating [to] the prescribing, administering, and monitoring of Gentami-cin, which were done by Dr. Luikart as well as [CarePoint], the dispensing pharmacists.”
IsOn October 31, 2011, plaintiff filed a petition for damages against CarePoint and/or The Infusion Network of Louisiana,, Inc. d/b/a CarePoint to recover damages sustained while he was under its care. In January 2013, a medical review panel found that the evidence did not support the conclusion that Dr. Luikart and OLOL failed to meet the applicable standard of care as charged in plaintiffs complaint. As to OLOL, the panel found no fault with the care rendered by the nurses nor any other employees of the hospital. On April 11, 2013, plaintiff filed a supplemental and amending petition adding as defendants Dr. Luikart and OLOL and- alleging that Dri Luikart was at fault for; among other things, treating plaintiff with an excessive dose of Gentamicin. The supplemental petition further alleged:"
The sole and proximate cause of the above-described injuries is the grossly negligent acts and/or inactions of Defendant, OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER, is specifically but hot exclusively, averred to be as follows:
1.) Failure of [OLOL], and [its] staff and employees, through its administration, to properly, monitor the actions and abilities of its staff and employees;
2.) Failure to have adequate written policy and implemented it, in order to insure coordination of the care of the discharging physician" and the primary physician[;]
3.) Failure to closely and timely assess, monitor, implement and. evaluate a plan of care for client;
4.) Failure to communicate plan of care, lab results, and planned interventions to physicians;
5.) Failure to ensure patient safety.
According to plaintiff, OLOL was vicariously liable and/or strictly liable for the negligence that occurred during the course and scope of employment of its employees.
On July 29, 2013, OLOL filed a motion for summary judgment, pointing out to the court that there was an absence of factual support for one or more elements essential to plaintiffs claims. Attached to OLOL’s motion were the plaintiffs original and supplemental petitions , for damages and the medical review panel’s opinion.
Plaintiff filed an opposition to OLOL’s motion for summary judgment "and a supporting memorandum wherein-he argued that OLOL, Dr. Luikart, and Dr. Giarus-so[1] deviated from the standard of care. Plaintiff included his medical-records, excerpts from Dr. Giarusso’s deposition, ex *29 cerpts from Dr. Luikart’s deposition, the affidavit of Dr. Hue-Teh Shih, and the affidavit of pharmacist Gary McGarity, to support his contention that OLOL and Dr. Giarusso breached the applicable standard of care.
OLOL filed a reply memorandum to the plaintiffs opposition arguing that plaintiffs allegations of negligence by Dr. Giarusso pertaining to the Gentamicin dosage were not heard before the medical review panel or raised in subsequent pleadings. According to OLOL, plaintiffs patient compensation fund complaint did not raise any issue that Dr. Giarruso negligently prescribed home infusion dosing of Gentami-cin contrary to OLOL pharmacy recommendations, and plaintiff failed to properly amend his pleadings to include that allegation. OLOL also argued that Dr. Shih’s report should be “struck and excluded” because Dr. Shih, a cardiologist, was not qualified to offer opinions regarding the standard of care for Dr. Giarusso, a hospi-talist, and because his report raised no genuine issues of material fact. OLOL further contended that Dr. Shih’s report lacked a scientific basis to establish that the discharge order of Dr. Giarruso caused plaintiffs injuries.
A hearing was held on June 23, 2014. At the outset of the hearing, the district court addressed OLOL’s motion to strike. OLOL sought to strike plaintiffs opposition to the motion for summary judgment, arguing that it was an improper expansion of the pleadings and went beyond the scope of that presented before the medical review panel, which included only “generic care” by the Inhospital without mention of Dr. Giarusso. OLOL also complained that Dr. Shih’s affidavit was inadequate in that Dr. Shih was not a hospitalist, and he failed to state the standard of care for a hospital internal medicine doctor. The plaintiff argued that the primary issue relative to OLOL was the adjusting of his dosage of Gentamicin. The district court pointed out plaintiffs argument regarding the appropriate dosages raised an entirely new claim and expanded the pleadings beyond that which was presented to the medical review panel. According to the court, plaintiffs argument was related to physician ' standards, rather than a hospital’s standard of care, and he was “expanding the pleadings by making those allegations.” For those reasons, the district court struck the arguments raised in plaintiffs opposition to OLOL’s motion for summary judgment and excluded the evidence attached to the opposition, specifically allegations of Dr. Giarusso’s improper reinstatement of Gentamicin. The court also foundi that Dr. Shih was “not qualified” and that his opinion was “immaterial:” The court struck Dr. Shih’s report, noting that it was “irrelevant” and lacked a scientific foundation.
In support of his argument that the motion for summary judgment filed by OLOL should be denied, plaintiff argued that testimony of OLOL employees established that the incorrect discharge prescription was used. According to the district court, the issue was whether the hospital breached its duty, not whether a physician breached his duty by changing the plaintiffs medication. Plaintiff responded that Dr. Giarusso was an employee of OLOL, and thus, OLOL was vicariously. liable for her actions. OLOL responded that the arguments raised by plaintiffs opposition had been stricken, and even if they had not, none of the testimony established that Dr. Giarusso breached the standard of care. Finding that the plaintiff failed to set forth specific facts showing that there was a genuine issue for trial, the district, court granted OLOL’s motion for summary judgment.
*30 InThe district court signed a judgment on July 17, 2014, granting OLOL’s motion to strike the affidavits of plaintiffs experts and plaintiffs opposition to OLOL’s motion for summary judgment to the extent that it alleged liability issues not set forth in the original or amended petitions. The judgment also granted OLOL’s motion for summary judgment and dismissed plaintiffs claims against OLOL with prejudice. It is from this judgment that the plaintiff appeals.

DISCUSSION

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. All Crane Rental of Georgia, Inc. v. Vincent, 2010-0116 (La.App. 1st Cir.9/10/10), 47 So.3d 1024, 1027, writ denied, 10-2227 (La.11/19/10), 49 So.3d 387. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(B)(2).
The burden of proof on a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. Code Civ. P. art. 966(C)(2); All Crane, 47 So.3d at 1027.
[7In ruling on a motion for summary judgment, the district court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of material fact. Id. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can only be seen in light of the substantive law applicable to the case. Pumphrey v. Harris, 2012-0406 (La.App. 1st Cir.11/2/12), 111 So.3d 86, 89.
In a medical malpractice action against a physician, the plaintiff must establish by a preponderance of the evidence the applicable standard of care, a violation of that standard of care, and a causal connection between the alleged negligence and the plaintiffs injuries. See La. R.S. 9:2794(A). Likewise, in a medical malpractice action against a hospital, the plaintiff must prove that the hospital caused the injury when it breached its duty. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 661 (La.1989). Expert testimony is generally required to establish the applicable standard of care and whether that standard of care was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. See Pfiffher v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228, 1233-34.
Plaintiffs petitions show that the medical malpractice alleged by plaintiff is not of the type that is so egregious that malpractice would be obvious to a lay person. See Pfiffner, 643 So.2d at 1233-34. Thus, expert medical testimony was necessary to prove his claims.
*31 In support of its motion for summary judgment, OLOL offered the opinion of the medical review panel, which concluded that the evidence did not support the conclusion that Dr. Luikart and OLOL failed to meet the applicable standard of 1 scare as charged in plaintiff’s complaint. The panel also concluded that as to OLOL, there was no fault with the care rendered by its nurses and employees. Thus, because OLOL met its burden of proof, the burden of proof shifted to the plaintiff to produce factual support sufficient to establish that he would be able to satisfy his evidentiary burden of proof at trial. See La. Code Civ. P. art. 966(C)(2).
In opposing the defendant’s motion for summary judgment, plaintiff submitted his medical records, excerpts from Dr. Giarus-so’s deposition, excerpts from Dr. Lui-kart’s deposition, the affidavit of Dr. Shih, and the affidavit of pharmacist Gary McGarity. Following a hearing on OLOL’s motion to strike, the district court ruled that it was “going to strike those allegations and exclude evidence that is attached to [plaintiff’s] opposition, specifically the allegations of [Dr. Giarusso’s] improper reinstatement of [Gentamicin] at 350 milligrams every 24 hours.” The court noted that it was also striking Dr. Shih’s affidavit.
The admission of expert testimony is governed by Louisiana Code of Evidence article 702:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a.witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
A district court is accorded broad discretion in determining whether expert opinion evidence should be held admissible, and its decision will not be overturned absent an abuse of discretion. See MSOF Corporation v. Exxon Corporation, 2004-0988 (La.App. lst Cir.12/22/05), 934 So.2d 708, 717, writ denied, 2006-1699 (La.10/6/06), 938 So.2d 78.
Louisiana Revised Statutes 9:2794(A) provides that in a medical malpractice action, the plaintiff has the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state |9of Louisiana and actively practicing in a similar community or locale under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved,- then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.
Section 2794 makes a distinction between the specialist and those physicians not practicing in a particular specialty. The non-specialist’s duty requires that degree of skill or care “exercised by physicians” “practicing in a similar community or locale and under similar circumstances[.]” La. R.S. 9:2794(A)(1). The specialist, on the other hand, is held under the statute to the degree of care ordinarily practiced by physicians within his medical specialty. Ardoin v. Hartford Accident and Indemn. Co., 360 So.2d 1331, 1340 (La.1978). Dr, Giarusso treated plaintiff as a hospitalist, and must be held to the standard of care of those physicians practicing in hospital medicine.
In his affidavit, Dr. Shih is identified as a board-certified cardiologist and expert in cardiology and clinical cardiac electrophy-siology licensed to practice in Taiwan, *32 R.O.C., Massachusetts, Michigan, California, Texas, Indiana, and Florida. The affidavit claims that Dr. Shih had clinical experience, provided consultation relating to clinical practice and/or taught medicine in “Defendants’ specialty or related field of healthcare or in the field of health care in which the Defendants provided care or treatment to DANNY PENN.” Dr. Shih concluded that there were violations of the standard of care by defendants, and had the defendants acted in accordance with the standards of care, plaintiff would not have suffered the' ototoxicity allegedly caused by incorrect dosing of Gentamicin. He stated that the pharmacists at OLOL correctly adjusted the Gentamicin regimen based on the 2008 American College of Cardiology/American Heart Association Guidelines, namely 3 mg/kg per twenty-four hours in equally divided doses (i.e., every eight hours) for four to six weeks. However, plaintiff was discharged on a higher dose |1flto be given every twenty-four hours, 3,7 mg/kg. According to Dr. Shih, plaintiff developed neurologic deficits as. the result of overdose of Gentamicin, and Drs. Giarusso and Luikart should have used the correct total daily dose and correct dosing schedule to minimize the toxicity. He further argued that CarePoint should have reviewed the Gentamicin order and communicated with the physician in charge of home infusion to. optimize the therapy. '
-The district court found that Dr. Shih lacked the requisite knowledge of accepted standards of medical care involved in plaintiffs claim, as well as the qualifications on the basis of training or experience to offer an expert opinion regarding those accepted standards of care. In coming to this conclusion, the district court specified that Dr. Shih was a cardiologist and did “not have the qualifications in hospital medicine.” Additionally, the court opined that Dr. Shih failed to provide a scientific foundation for his report.
Dr. Shih’s affidavit indicates that he is an expert in cardiology and clinical cardiac electrophysiology and offered his expert opinion in cardiology relative to the appropriate standard of care. However, his report fails to offer an opinion as to the standard of care to be exercised by a hospitalist, such as Dr. Giarusso, ,or a general hospital, such as OLOL. Thus, his testimony would not assist the trier of fact in determining whether Dr. Giarusso or OLOL breached their standard of care. Therefore, based on our review of the record before us, we cannot say that the district court abused its discretion in ruling that Dr. Shih’s affidavit was inadmissible.
Because we find that the district court did not abuse its discretion in excluding Dr..' Shih’s affidavit from evidence, and plaintiff produced no other evidence to esr tablish the applicable standard of care as to OLOL or that the standard of care was breached, we likewise find that plaintiff failed to establish |nthat he would be able to satisfy his evidentiary burden of proof at trial, and the district court' was correct in granting summary judgment in favor of OLOL.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court granting Our Lady of the Lake’s motion to strike, granting summary judgment in favor of Our Lady of the Lake, and dismissing plaintiffs claims against them with prejudice. All costs of this appeal are to be borne by the plaintiff, Danny Penn.
AFFIRMED.
McCLENDON, j. concurs with the result reached by the majority.

. Dr. Giarusso was the hospitalist treating plaintiff after he Was admitted to OLOL.