NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0588

ANNA GOREY, INDIVIDUALLY AND ON BEHALF OF THE
ESTATE OF THEOPHILE BENEDICT CHUSTZ, JR.

VERSUS

DR. SALMAN BAGHIAN, DR. DEBBIE DIXON, DR. LURA WIGHT,
DR. AMY LOBRANO, OUR LADY OF THE LAKE REGIONAL
MEDICAL CENTER AND ABC INSURANCE COMPANY

*DATE OF JUDGMENT:*    JAN 0 9 2020

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
NUMBER 663339, SECTION 22, PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

HONORABLE TIMOTHY E. KELLEY, JUDGE

* * * * * *

Joshua M. Palmintier
Monica Gant Moton
Baton Rouge, Louisiana

Counsel for Plaintiff-Appellant
Anna Gorey

Douglas K. Williams
Kelsey A. Clark
Baton Rouge, Louisiana

Counsel for Defendant-Appellee
Our Lady of the Lake Hospital, Inc.

* * * * * *

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

Disposition: AFFIRMED.

McDonald, J. concurs and assigns reasons.

**CHUTZ, J.**

Plaintiff-appellant, Anna Gorey, individually and on behalf of Theophile Benedict Chustz, Jr. (the decedent), appeals the trial court's grant of summary judgment in favor of defendant-appellee, Our Lady of the Lake Hospital, Inc. (OLOL), and the dismissal with prejudice of her wrongful death and survival actions against OLOL arising from alleged medical malpractice. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

After the decedent died while in OLOL under the care of doctors, Gorey filed this lawsuit.[1] According to the allegations of Gorey's petition, on October 18, 2014, the decedent was admitted into OLOL for rectal bleeding. On October 21, 2014, a swallow study was performed on the decedent. Based on the results of the study, the decedent "was placed on a 'pleasure' diet of solid foods such as pudding and other stickier foods such as grits, which ultimately caused [his] death." Gorey averred that the decedent was discharged from OLOL on October 25, 2014, but was re-admitted the next day because he was still coughing and was experiencing rectal bleeding. A surgery was performed to stop the bleeding at which time "an inordinate amount of grits" was found in the decedent's throat. According to the petition, subsequently "a broncho-study was performed on [the decedent], which showed that his lungs were completely wiped out and that he had been aspirating since before his discharge." Gorey alleged that the decedent continued to aspirate until he died five days later.

In her lawsuit against OLOL, Gorey maintained that the proximate cause of the decedent's injuries and death was OLOL's substandard care and conduct in failing to: (1) properly consult with the family prior to prescribing a solid-food

---

[1] Gorey additionally named four physicians who cared for decedent while he was at OLOL. All the physician defendants were dismissed from this lawsuit by summary judgment, and Gorey has not appealed any of those dismissals.

diet; (2) monitor decedent as required in light of his symptoms and physical findings; and (3) perform tests and evaluations to properly diagnose and treat him. She also claimed that OLOL failed to generally meet the standard of care. OLOL answered the lawsuit, denying Gorey's allegations.

Thereafter, OLOL filed a motion for summary judgment, contending that Gorey could not satisfy her burden of proof at trial and seeking dismissal from the lawsuit. Gorey filed an opposition to the motion for summary judgment, attaching to it two affidavits that she urged demonstrated outstanding issues of material fact, which precluded the granting of summary judgment. In response, OLOL filed a reply memorandum in which it objected to one of the affidavits attached to Gorey's summary judgment opposition.

A hearing was held at which the trial court concluded that the affidavit of the medical expert Gorey offered was inadmissible and granted OLOL's motion for summary judgment. A judgment in conformity with the trial court's rulings was signed, and Gorey appealed, challenging the propriety of the trial court's grant of summary judgment.

## DISCUSSION

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Beer Indus. League of Louisiana v. City of New Orleans*, 2018-0280 (La. 6/27/18), 251 So.3d 380, 385-86.

3

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that it negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966D(1). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can only be seen in light of the substantive law applicable to the case. *Pumphrey v. Harris*, 2012-0405 (La. App. 1st Cir. 11/2/12), 111 So.3d 86, 89.

La. R.S. 9:2794(A) provides that in a medical malpractice action, the plaintiff has the burden of proving:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.

In a medical malpractice action against a physician, the plaintiff must establish by a preponderance of the evidence the applicable standard of care, a violation of that standard of care, and a causal connection between the alleged negligence and the plaintiff's injuries. Likewise, in a medical malpractice action against a hospital, the plaintiff must prove that the hospital caused the injury when it breached its duty. Expert testimony is generally required to establish the applicable standard of care and whether that standard of care was breached, except

4

where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Lee v. Quinn*, 2017-0070 (La. App. 1st Cir. 9/15/17), 229 So.3d 13, 16-17, writ denied, 2017-1729 (La. 12/5/17), 231 So.3d 630.

The allegations setting forth OLOL's purported negligence are not of the type of negligence which is so egregious that malpractice would be obvious to a layperson. Thus, expert testimony was necessary for Gorey to prove her claims.

In support of its motion for summary judgment, OLOL offered the affidavit of the attorney chairman of the medical review panel, to which a copy of the panel's unanimous opinion was attached. The panel concluded OLOL did not deviate from the appropriate standard of care. The panel's opinion specifically noted that "[t]he bronchoscopy findings showed mucus in the [decedent's] lungs and pneumonia." The panel concluded that the bronchoscopy findings were "consistent with hospital acquired pneumonia and not aspiration."

Additionally, in support of its motion for summary judgment, OLOL offered the affidavits of two defendants, who were treating physicians of the decedent. The affidavit of Dr. Salman Baghian, a physician who is board-certified in internal medicine, referenced the bronchoscopy report to note that no aspiration material had been found in the decedent's lungs but rather "mucoid plugs in the left and right main stem bronchus" had been detected. Dr. Baghian opined that the decedent died as a result of the inevitable complications related to his initial presenting illnesses. Dr. Debbie Dixon also confirmed that "multiple mucous plugs involving the left and right mainstem bronchus" were found and the [b]roncoalveolar lavage of the left upper lobe culture returned positive moderate presumptive Staph aureus (Methicillin resistant)." She attested that just after the bronchoscopy, the decedent "met the criteria of sepsis with leukocytosis and

5

tachypnea, with the source being pneumonia, likely [methicillin resistant Staphylococcus aureus] pneumonia given the [bronchoalveolar lavage] culture results." According to Dr. Dixon, the decedent's cause of death was "acute respiratory failure and septic shock due to methicillin resistant [Staphylococcus] aureus pneumonia."[2]

With this showing, OLOL established that it had not deviated from the standard of care so as to have caused the decedent's death. The burden of proof then shifted to Gorey to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial. See La. C.C.P. art. 966D(1); *Penn v. CarePoint Partners of Louisiana, L.L.C.*, 2014-1621 (La. App. 1st Cir. 7/30/15), 181 So.3d 26, 31.

The admission of expert testimony is governed by La. C.E. art. 702, which states in relevant part:

> A. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based on sufficient facts or data;
>
> (3) The testimony is the product of reliable principles and methods; and
>
> (4) The expert has reliably applied the principles and methods to the facts of the case.

---

[2] La. C.C.P. art. 967A requires that "[s]worn or certified copies of papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Although Drs. Baghian and Dixon's references to the bronchoscopy report, which was not attached to their respective affidavits, do not conform to the requirements of Article 967A, Gorey did not object. If an expert's affidavit contains opinions that lack an adequate factual basis, are not sufficiently reliable, or are otherwise inadmissible under Article 967A, the opposing party must object to the affidavit. *Thompson v. Ctr. for Pediatric & Adolescent Med., L.L.C.*, 2017-1088 (La. App. 1st Cir. 3/15/18), 244 So.3d 441, 446, writ denied, 2018-0583 (La. 6/1/18), 243 So.3d 1062; see also La. C.C.P. art. 966D(2) ("The court … shall consider any documents to which no objection is made."). Accordingly, the opinions of these affiants are correctly considered in the disposition of OLOL's motion for summary judgment.

A trial court is accorded broad discretion in determining whether expert opinion evidence should be held admissible, and its decision will not be overturned absent an abuse of discretion. **Penn**, 181 So.3d at 31.

Gorey offered two affidavits in opposition to OLOL's motion for summary judgment. One affidavit was that of Queen Ross, the decedent's caregiver who was present with him in his hospital room on October 25, 2014. She attested that she personally saw a food tray in decedent's hospital room that contained grits and fruit. Ross further stated that she asked the nurse if she was aware of the decedent's food restrictions, the nurse said that she was not, and the nurse told Ross that the decedent had eaten grits and fruit. According to Ross, the decedent had also advised her that he had eaten grits and fruit.

The other affidavit that Gorey offered was that of Dr. Hiren Shah, a licensed internal medicine physician in the State of Illinois. It was Dr. Shah's affidavit to which OLOL objected in its reply memorandum insofar as the causation opinion which, OLOL urged, was speculative and lacked sufficient evidentiary support.[3]

Pretermitting a discussion of whether Dr. Shah's affidavit established the standard of care applicable to OLOL and its violation by OLOL, we conclude Dr. Shah's attestations are insufficient to establish a causal connection between any alleged negligence by OLOL and decedent's death. Based on Ross's affidavit, Dr. Shah determined that the decedent "was given oral intake including fruit" and that when the decedent was readmitted on October 25, 2014, "he more likely than not had aspiration pneumonia as a result of the food that was provided to him the day prior which led to an aspiration event." Pointing to "the extent of mucus production and involvement of his left lung field on the chest x-ray as well as extensive mucus in the bilateral lobes on [the] bronchoscopy," Dr. Shah opined

---

[3] See La. C.C.P. art. 966D(2) (providing that in the context of a summary judgment, "[a]ny objection to a document shall be raised in a timely filed opposition or reply memorandum").

7

that "more likely than not, this was the result of the progression of the aspiration pneumonia which began after an aspiration event on 10/25/2014."

We find Dr. Shah's statements are opinions unsupported by the facts. Notably absent from the record is any evidence of distress having been suffered by the decedent subsequent to any oral intake, including grits and fruit, that he ostensibly ingested on October 25, 2014 prior to his discharge that same day. Although Gorey pled that the decedent experienced an aspiration event, she failed to offer any evidence of acute distress suffered by the decedent which caused him to seek readmission into the hospital on October 26, 2014. Additionally, in his affidavit, Dr. Shah relied on the mucus production in the bronchoscopy to conclude "more likely than not ... was the result of aspiration pneumonia," without identifying any aspiration materials to support his medical conclusion or explaining what symptomology correlated with the diagnosis.

Given Dr. Shah's failure to provide a scientific foundation for his opinion, the trial court did not abuse its discretion in finding his affidavit inadmissible.[4] Because we find that the trial court did not abuse its discretion in excluding Dr. Shah's affidavit from evidence, and Gorey produced no other evidence to establish a violation by OLOL of the standard of care that caused the decedent's death, we likewise find she failed to establish that she will be able to satisfy her evidentiary

---

[4] OLOL objected to Dr. Shah's affidavit on the basis that it enlarged the pleadings. In her petition, Gorey alleged that the decedent "was placed on a 'pleasure' diet of solid foods such as pudding and other stickier foods such as grits, which ultimately caused [his] death." Based on Ross's attestations, Dr. Shah opined that "[w]hen the caregiver informed [the] nursing staff that [providing solid and non-pureed foods] was against the dietary recommendations..., her information was not taken into consideration and the standard of care was breached by providing solid and non-puree foods." OLOL suggests that Gorey never mentioned ingestion of fruit as a cause of death; and that a consideration of whether OLOL violated an order restricting the decedent's dietary restrictions is an enlargement of Gorey's allegation that the dietary restrictions order was the cause of the decedent's death. Moreover, OLOL urges that it was not reasonably notified of the additional claims by the allegations of the petition. Because the record is devoid of medical evidence to support a finding that any act or omission by OLOL was the cause-in-fact of the decedent's death, we find it unnecessary to consider whether the affidavits attached to Gorey's opposition memorandum constitute an enlargement of the pleadings which would alternatively warrant the exclusion of Dr. Shah's affidavit and pretermit such a discussion.

burden of proof at trial. Accordingly, the trial court correctly granted summary judgment in favor of OLOL.

## DECREE

For these reasons, the trial court's judgment is affirmed. Appeal costs are assessed against plaintiff-appellant, Anna Gorey, individually and on behalf of Theophile Benedict Chustz, Jr.

**AFFIRMED.**

ANNA GOREY, INDIVIDUALLY AND ON BEHALF OF
THE ESTATE OF THEOPHILE BENEDICT CHUSTZ, JR.

VERSUS

DR. SALMAN BAGHIAN, DR. DEBBIE DIXON, DR. LURA WIGHT, DR. AMY
LOBRANO, OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER
AND ABC INSURANCE COMPANY

**McDONALD, J., concurring.**

I agree with the affirmance of the judgment in this case but write separately to set forth a slightly different view of the admissibility of certain summary judgment evidence.

OLOL filed the affidavits of Drs. Baghian and Dixon in support of its motion for summary judgment. Both affidavits reference an unattached bronchoscopy report, in violation of La. C.C.P. art. 967A. Gorey did not object to the admissibility of the affidavits on this basis; thus, the trial court was required to consider the affidavits. *See* La. C.C.P. art. 966D(2). Upon this consideration, the trial court apparently found no impediment to the admissibility of the affidavits referencing the unattached bronchoscopy report and afforded the affidavits appropriate evidentiary weight. As the majority points out, the trial court did not err in doing so. For a recent discussion of a similar issue by another panel of this court, see *Pottinger v. Price,* 19-0183 (La. App. 1 Cir. 10/23/19), ___ So.3d ___, 2019 WL 5485215 *2-3.