Judgment rendered February 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,434-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

THOMAS NELSON                                   Plaintiff-Appellant

versus

DR. VIPUL SHELAT, DR. JORGE                     Defendants-Appellees
ALVERNIA AND THEIR
UNKNOWN INSURERS,
JOINTLY AND SOLIDARILY

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019-2279

Honorable Alvin R. Sharp, Judge

* * * * *

DAVIS LAW OFFICE, LLC                           Counsel for Appellant
By: S.P. Davis, Sr.
    Kharmen Davis-Taylor

BREAZEALE SACHSE & WILSON, LLP                  Counsel for Appellee,
By: Harry McClellan Moffett, IV                 Dr. Jorge Alvernia
    Laura S. Achord

* * * * *

Before PITMAN, THOMPSON, and ELLENDER, JJ.

**ELLENDER, J.**

Thomas Nelson appeals a summary judgment that dismissed his medical malpractice claim against neurosurgeon Dr. Jorge Alvernia, arising from alleged deficiencies in the treatment of his late son, Thomas Nelson II (hereinafter, "Thomas"). For the reasons expressed, we affirm.

## PROCEDURAL BACKGROUND

Thomas was an epilepsy patient with a history of intractable seizures. His neurologist, Dr. Vipul Shelat, had a neurosurgeon implant a vagal nerve stimulator ("VNS") in his neck in 2002, and had other neurosurgeons perform revisions in 2009, 2011, and 2013, but Thomas continued to have "breakthrough seizures."

By then 37 years old, Thomas returned to Dr. Shelat on July 27, 2015, for recent falls and loss of consciousness. The VNS battery check failed twice, showing "IFI," indicating low battery charge. Dr. Shelat set up a consultation with Dr. Alvernia to evaluate replacing the battery. Thomas missed this appointment, but came back to Dr. Shelat on August 6. The battery again tested IFI, so Dr. Shelat set up a visit for the next day with Dr. Alvernia.

Accompanied by his father, Thomas made this appointment; according to Dr. Alvernia's records, they discussed their options, and Thomas and his father wanted to proceed. The parties agree they made an appointment for Thomas to return in 8 to 10 days to replace the battery.[1]

---

[1] At the hearing on the motion for summary judgment, counsel for Dr. Alvernia also referred to an additional appointment, with a Dr. Gonzales, for "cardiac clearance," before Dr. Alvernia could consider surgery; however, this is not explicit in Dr. Alvernia's records.

Unfortunately, Thomas had a major seizure and died on August 15, 2015, before this appointment with Dr. Alvernia.

Nelson filed a request for medical review panel against Dr. Shelat and Dr. Alvernia, with the MRP unanimously finding in favor of the doctors. Nelson followed with this suit in the Fourth JDC. The claim against Dr. Shelat was dismissed by summary judgment, which this court affirmed in *Nelson v. Shelat*, 54,009 (La. App. 2 Cir. 8/18/21), 325 So. 3d 1170, *writ denied*, 21-01354 (La. 11/17/21), 327 So. 3d 997.

The claim against Dr. Alvernia alleged breaches of the standard of care by (1) not properly and timely assessing and treating Thomas's seizure disorder on August 7, 2015, (2) not replacing his VNS battery on August 7, 2015, (3) failing to prevent his death when he knew or should have known that failure to replace the dead and weak battery could lead to death, (4) failing to provide him with the last clear chance of survival, and (5) causing and contributing to his death by not changing the battery when the patient was in the office on August 7, 2015.

Dr. Alvernia filed a motion for summary judgment. In support, he attached copies of his own and of Dr. Shelat's medical records; copies of Thomas's autopsy report; copies of Nelson's MRP request and original petition; a certified copy of the MRP opinion; the affidavit of Dr. Shelat; and portions of the deposition of Dr. Paul Kaloostian, Nelson's expert neurosurgeon. Dr. Alvernia argued that the MRP found no breach of the standard of care, and Dr. Kaloostian's opinion to the contrary was based on the flawed assumption that Thomas's VNS battery was "dead" and "nonfunctioning" when he came to the office on August 7, 2015. Dr. Shelat's affidavit, and the MRP opinion, both established that a battery at IFI

2

has 8-18% of full charge, and the standard of care in that situation is close monitoring, which Dr. Alvernia satisfied by making an appointment to replace the battery within 8-10 days.

Nelson opposed the motion, offering several of the same items previously filed by Dr. Alvernia, plus an affidavit from Dr. Kaloostian. This new document conceded that a fully functioning VNS battery is not a "cure" for seizures, but reiterated his view that Nelson's "failed, nonfunctioning battery should have been immediately replaced" on August 7, 2015.

Dr. Alvernia responded, again contesting Dr. Kaloostian's assumption that the VNS battery was "nonfunctioning"; in fact, Dr. Shelat's records showed (and the MRP found) the battery was "IFI," with 8-18% of full charge. Dr. Alvernia also showed that in his deposition, Dr. Kaloostian stated, "nobody knows the battery percentage life at the time of [Thomas's] death"; there was no basis to change this view in his subsequent affidavit.

After hearing oral arguments, the district court took the matter under advisement. Stating on the record that it found no genuine issues of material fact and that the mover was entitled to judgment as a matter of law, it rendered judgment dismissing Nelson's claims. This appeal followed.

**APPLICABLE LAW**

In a medical malpractice case, the plaintiff has the burden of proving the applicable standard of care, that the standard of care was breached, and that as a proximate result of the breach, the plaintiff sustained injuries that would not otherwise have been incurred. La. R.S. 9:2794 (A); *Burchfield v. Wright*, 17-1488 (La. 6/27/18), 275 So. 3d 855; *Harris v. Holliway Med. Clinic*, 54,697 (La. App. 2 Cir. 8/10/22), 345 So. 3d 452. The mere fact that an injury occurred does not raise a presumption that the healthcare provider

breached the standard of care. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So. 2d 512; *Lewis on Behalf of Lewis v. Cornerstone Hosp. of Bossier City LLC*, 53,056 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1262. Expert testimony is generally required to establish the applicable standard of care and whether it has been breached, except where the negligence is so obvious that a lay person can infer it without the guidance of expert testimony. *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So. 3d 1002; *Nelson v. Shelat, supra.* Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action brought by the claimant in a court of law, but shall not be conclusive. La. R.S. 40:1231.8 (H).

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Murphy v. Savannah*, 18-0991 (La. 5/8/19), 282 So. 3d 1034. Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish those ends. La. C.C.P. art. 966 (A)(2).

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 (A)(3). A genuine issue is one about which reasonable persons could disagree. *Murphy v. Savannah, supra.* The district court cannot make credibility calls on a motion for summary judgment, but must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion. *Independent Fire Ins. Co. v. Sunbeam Corp.,*

4

99-2257 (La. 2/29/00), 755 So. 2d 226; *Bloxham v. HDI-Gerling Amer. Ins. Co.*, 52,177 (La. App. 2 Cir. 6/27/18), 251 So. 3d 601.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966 (D)(1).

Affidavits are among the documents that may be filed to support or oppose the motion for summary judgment. La. C.C.P. art. 966 (A)(4)(a). Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967 (A). When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue of material fact for trial. La. C.C.P. art. 967 (B). If an affidavit is devoid of specific facts, it is not sufficient to defeat summary judgment. *Murphy v. Savannah*, *supra*.

Appellate courts review the grant or denial of summary judgment de novo, using the same criteria that guided the district court's determination.

*Farrell v. Circle K Stores Inc.*, 22-00849 (La. 3/17/23), 359 So. 3d 467. In all cases, the court shall state on the record or in writing the reasons for granting or denying the motion for summary judgment. La. C.C.P. art. 966 (C)(4). However, because review of summary judgment is de novo, with no deference owed to the district court's findings, the appellate court may still review the judgment even in the absence of compliance with Art. 966 (C)(4). *Horrell v. Alltmont*, 21-0566 (La. App. 1 Cir. 12/22/21), 340 So. 3d 909; *King v. Allen Court Apts. II*, 15-0858 (La. App. 1 Cir. 12/23/15), 185 So. 3d 835, *writ denied*, 16-0148 (La. 3/14/16), 189 So. 3d 1069.

### NELSON'S POSITION

By his sole assignment of error, Nelson urges the court committed reversable error and was clearly wrong in finding an absence of genuine issues of material fact and granting summary judgment without reasons. He shows that a "genuine issue" is a triable issue, *Supreme Servs. & Spec. Co. v. Sonny Greer Inc.*, 06-1827 (La. 5/22/07), 958 So. 2d 634. He suggests the following are genuine issues:

> • Dr. Shelat sent Thomas to Dr. Alvernia on August 7, 2015, to replace the failed battery, not to test or investigate it; the record does not show that Dr. Alvernia even tested the battery that day.

> • The MRP report is "unreliable, untrustworthy, and should not be given any weight," even though it was legally admissible; in particular, its finding that Thomas missed his first appointment with Dr. Alvernia is "totally untrue."

> • Dr. Kaloostian has exemplary credentials, and the court should have accepted his views that (1) Dr. Alvernia's failure to replace the battery on August 7, 2015, "caused and substantially contributed to" Thomas's "avoidable and preventable death" and that (2) Dr. Kaloostian was perfectly justified in saying the battery was "failed, nonfunctioning" when Thomas left Dr. Shelat's office on August 7.

• Dr. Shelat's affidavit is unreliable and untrustworthy, and should have been ignored; specifically, it nowhere states that the battery life was 8-18%.

He submits that any one of these discrepancies would create a genuine issue of material fact. He concedes that in some cases, like *Franklin v. Tulane Univ. Hosp. & Clinic*, 06-1557 (La. App. 4 Cir. 11/21/07), 972 So. 2d 369, *writ denied*, 07-2468 (La. 2/15/08), 976 So. 2d 186, and *Penn v. Carepoint Partners of La. LLC*, 14-1621 (La. App. 1 Cir. 7/30/15), 181 So. 3d 26, the courts were right to reject the depositions of medical experts, but that no such justification existed here.

Finally, he argues the court's failure to set out its reasons for judgment clearly shows the court improperly weighed the credibility of Dr. Shelat over Dr. Kaloostian. He concludes the judgment should be reversed and the case remanded for further proceedings.

**DISCUSSION**

Nelson was required to prove the applicable standard of care, breach of the standard, and injuries sustained as a proximate result. La. R.S. 9:2794 (A); *Burchfield v. Wright*, *supra*. By motion for summary judgment, Dr. Alvernia challenged Nelson's evidence to create a genuine issue as to the first essential element: when presented with a patient like Thomas, is the neurosurgeon required to replace the VNS battery immediately, or may he monitor the situation and replace the battery in the near future?

Much of Nelson's argument contests the credibility of Dr. Shelat and of the MRP report, and urges the credibility of Dr. Kaloostian, but the court does not assess credibility on motion for summary judgment. *Independent Fire Ins. Co. v. Sunbeam Corp.*, *supra*; *Bloxham v. HDI-Gerling Amer. Ins.*

7

*Co.*, *supra*. The court's duty is to look for the factual basis of the evidence offered to support or oppose the summary judgment.

Nelson concedes the MRP report is, by statute, admissible, La. R.S. 40:1231.8 (H), including on motion for summary judgment. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Nelson v. Shelat*, *supra*. Although the opinion stated therein is not conclusive, a party may use any member of the MRP to dispute the opinion. La. R.S. 40:1231.8 (H). Notably, Nelson did not attempt to depose any of the MRP members, but merely argues their collective conclusion was unreasonable.

The primary thrust of Nelson's argument is to accept Dr. Kaloostian's view that the VNS battery was "dead" and "nonfunctioning" on August 7 and needed immediate replacement, which differed from Dr. Shelat's and the MRP's view that the battery was "IFI" (8-18%) on August 7, was "non-emergent," and, thus was a genuine issue for trial. On de novo review, however, we find that Dr. Kaloostian's opinion deviated from the facts of the case as established in Dr. Shelat's records. These clearly showed the battery was not dead or nonfunctioning, but at 8-18% power. Dr. Kaloostian never addressed what standard of care applied when the battery is IFI. While Dr. Kaloostian's affidavit is not *devoid* of factual basis, it lacks "factual foundation" to create a genuine issue as to the correct standard of care. *Nelson v. Shelat*, *supra*.

We also note that earlier, in his deposition, Dr. Kaloostian stated he was not familiar with the make and model of Thomas's VNS battery, or what would be considered a low charge on it, only that it was low on August 7. These admissions underscore the lack of factual basis for the assertion, in his subsequent affidavit, that the battery was dead. A party cannot

8

manufacture a genuine issue by filing an affidavit in which the witness merely contradicts testimony given in an earlier deposition. *Bloxham v. HDI-Gerling Amer. Ins. Co.*, *supra*; *Chapital v. Harry Kelleher & Co.*, 13-1606 (La. App. 4 Cir. 6/4/14), 144 So. 3d 75.

Nelson also argues the district court failed to set out its reasons for granting summary judgment, and this shows that it improperly weighed the credibility of the witnesses. As noted, Art. 966 (C)(4) requires the court to "state on the record or in writing the reasons for granting or denying" the motion, but does not prescribe any form for doing so. Here, the district court's compliance with the article was minimal, reciting only the statutory criteria for summary judgment and mentioning no facts. However, Nelson did not request written reasons, as he could have done under Art. 966 (C)(4). At any rate, our review is de novo, and it is apparent the district court did not use any unanticipated or novel theory to dispose of the case. *Horrell v. Alltmont*, *supra*. We find no error.

Finally, Nelson attempted to distinguish two cases, *Franklin v. Tulane Univ. Hosp. & Clinic*, *supra*, and *Penn v. Carepoint Partners of La.*, *supra*, as cases in which expert medical affidavits were properly excluded on motion for summary judgment. We agree with the holdings in those cases: the tendered experts were not in the same medical specialties as the defendant physicians. Here, Dr. Kaloostian was plainly in the same specialty as Dr. Alvernia, neurosurgery, but this was not the reason to exclude his opinion. These cases do not alter the finding that Dr. Kaloostian's affidavit lacked the factual foundation to create a genuine issue of material fact.

## CONCLUSION

For the reasons expressed, we affirm the judgment.  All costs are to be paid by Thomas Nelson.

**AFFIRMED**.