STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2020 CA 1172

DYNAMIC ENVIRONMENTAL SERVICES, LLC

VERSUS

KYLE MARIONEAUX, KARA KANTROW, MARIONEAUX
KANTROW, LLC AND CONTINENTAL CASUALTY COMPANY

JUDGMENT RENDERED: __APR 1 6 2021__

* * * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge • State of Louisiana
Docket Number C655719 • Division 22

The Honorable Timothy E. Kelley, Judge Presiding

* * * * * * *

<table>
<tr><td>Jacques F. Bezou<br>Jacques F. Bezou, Jr.<br>Erica A. Hyla<br>Matthew L. Devereaux<br>Sam J. Collett, III<br>Covington, Louisiana</td><td>COUNSEL FOR APPELLANT<br>PLAINTIFF—Dynamic<br>Environment Services, LLC</td></tr>
<tr><td>Connell L. Archey<br>Keith J. Fernandez<br>Baton Rouge, Louisiana</td><td>COUNSEL FOR APPELLEES<br>DEFENDANTS—Kyle<br>Marionneaux, Kara Kantrow,<br>Marionneaux Kantrow, LLC, and<br>Continental Casualty Company</td></tr>
</table>

* * * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

1

**WELCH, J.**

In this action for damages based on legal malpractice, the plaintiff, Dynamic Environmental Services, LLC ("Dynamic"), appeals a summary judgment granted in favor of the defendants, Kyle C. Marionneaux; Kara B. Kantrow; Marionneaux Kantrow, LLC; and their insurer, Continental Casualty Company (collectively "Marionneaux Kantrow"), which dismissed all of Dynamic's claims against Marionneaux Kantrow. For reasons that follow, we affirm in part, reverse in part, and remand.

## FACTUAL AND PROCEDURAL HISTORY

On May 15, 2000, the Louisiana Public Service Commission ("LPSC") issued Common Carrier Certificate Number 5662-F (Corrected) ("Certificate 5662") to Steve Kent Trucking, Inc. ("SK Trucking"), which allowed for the transportation of certain waste for disposal, subject to specific enumerated restrictions. SK Trucking was owned by Steve Kent, Sr. (50%) and his wife, Trudy Kent (50%). The following year, Dynamic, a transportation company providing emergency spill cleanup, environmental services, rental equipment, and transportation services to the petrochemical, refinery, marine, municipal and oilfield industries, across south Louisiana, was formed. Dynamic was owned by Damon Wood (33⅓%), Brent Upton (33⅓%), and Steve Kent, Sr. and Trudy Kent (jointly, 33⅓%). From 2005 until 2016, Dynamic transported regulated waste using Certificate 5662.

Damon Wood and Brent Upton became aware that the Kents and SK Trucking were having financial difficulties. Therefore, on December 23, 2013, Damon Wood and Brent Upton purchased Steve and Trudy Kent's interest in Dynamic. On that same date, as part of the transaction and for consideration, Dynamic and SK Trucking entered into a Licensing Agreement, which provided Dynamic the non-exclusive right to use Certificate 5662. Dynamic's right to use

2

Certificate 5662 was to be in perpetuity and could not be "assigned, transferred, pledged, or hypothecated in any way ..." The Licensing Agreement further provided that "[a]ny attempt to assign or transfer contrary to the terms of the agreement [would] be null and void." The Licensing Agreement was not filed with the LPSC.

Prior to December 23, 2013 (the date the Licensing Agreement was executed by SK Trucking and Dynamic), Dynamic retained Marionneaux Kantrow to assist Dynamic in filing an application with the LPSC for its own common carrier certificate. An application was filed by Marionneaux Kantrow on behalf of Dynamic in January 2014, which was docketed as LPSC docket number T-33092. At the time, Marionneaux Kantrow was unaware of the Licensing Agreement between Dynamic and SK Trucking for Certificate 5662 and was not involved in the drafting or execution of the Licensing Agreement in any way. On July 23, 2014, the deposition of Dynamic's dispatcher, Scott Feske, was taken in the LPSC docket number T-33092 proceedings; Kara Kantrow attended this deposition. Dynamic contends that during this deposition, Kara Kantrow became aware that Dynamic was transporting waste utilizing Certificate 5662.

On April 13, 2015, Dynamic and SK Trucking entered into a First Amendment to the Licensing Agreement permitting SK Trucking to assign its rights, interests, and benefits in and to the Licensing Agreement to Regions Bank, a lien-holder over the assets of SK Trucking. Less than one month later, on May 8, 2015, Dynamic and SK Trucking entered into a Second Amendment to the Licensing Agreement, wherein the First Amendment was revoked, repealed, and removed. SK Trucking again agreed not to assign the Licensing Agreement, to require any future holder of Certificate 5662 to be burdened with SK Trucking's obligations to Dynamic under the Licensing Agreement and Second Amendment, and not to permit any additional licenses of Certificate 5662 to any other third

3

party after May 7, 2015. In connection with the Second Amendment and as additional consideration, Dynamic paid Regions Bank the sum of $600,000.00 on behalf of SK Trucking.

Prior to that time, in 2012, Steve Kent, Sr. formed Kent & Smith Holdings, LLC with Gerard Smith. After the execution of the Licensing Agreement and the Second Amendment thereto between Dynamic and SK Trucking, on May 4, 2015, Steve Kent, Sr. sold his membership interest in Kent & Smith Holdings to Gerard Smith; thus, Gerard Smith became the sole member of Kent & Smith Holdings. In June 2015, SK Trucking was placed into formal liquidation by its creditor, Regions Bank. Kent & Smith Holdings, LLC retained Marionneaux Kantrow to negotiate and draft an Asset Purchase Agreement on behalf of Kent & Smith Holdings providing that Kent & Smith Holdings would acquire from SK Trucking all of SK Trucking's right, title, and interest in Certificate 5662. Kara Kantrow negotiated the Asset Purchase Agreement on behalf of Kent & Smith Holdings, with attorney John Dale Powers representing SK Trucking. At the time, Marionneaux Kantrow was still representing Dynamic in LPSC docket number T-33092 relative to Dynamic's application for its own common carrier certificate.

The Asset Purchase Agreement drafted by Marionneaux Kantrow was executed on July 24, 2015, by SK Trucking and Kent & Smith Holdings. The Asset Purchase Agreement specifically stated that the assets were being purchased "free and clear of any and all encumbrances of any kind." The Asset Purchase Agreement did not mention the Licensing Agreement between Dynamic and SK Trucking or the Second Amendment thereto, or that SK Trucking had agreed not to transfer Certificate 5662 unless it was burdened with SK Trucking's obligations to Dynamic under the Licensing Agreement and the Second Amendment. This was purportedly due to Marionneaux Kantrow not knowing about the Licensing Agreement or Second Amendment between SK Trucking and Kent & Smith

4

Holdings relative to Certificate 5662.

On July 28, 2015, Kyle Marionneaux received an email from John Dale Powers, which contained copies of the Licensing Agreement, the First Amendment, and an unsigned copy of the Second Amendment. In the email, John Dale Powers specifically asked Kyle Marionneaux, "Do these documents, in order to protect Dynamic ..., need to be reflected?" On that same date, July 28, 2015, Marionneaux Kantrow filed a Joint Application on behalf of both SK Trucking and Kent & Smith Holdings with the LPSC seeking approval of the transfer of Certificate 5662 from SK Trucking to Kent & Smith Holdings. The Joint Application was assigned LPSC docket number T-33737, and on July 31, 2015, it was published in the LPSC Official Bulletin No. 1094. After various proceedings and a hearing, on September 25, 2015, the LPSC issued an order in LPSC docket number T-33737 approving the transfer of Certificate 5662 from SK Trucking to Kent & Smith Holdings.

On August 11, 2015, between the date the Joint Application was filed with the LPSC and the date of the hearing in LPSC docket number T-33737, John Dale Powers sent a letter to Kyle Marionneaux, noting that "[i]n reviewing the Petition [(Joint Application)] which you [(Kyle Marionneaux)] filed with the [LPSC] regarding the transfer of the [SK Trucking] permit [(Certificate 5662)], would you [(Kyle Marionneaux)] need to mention that [SK Trucking] would also retain the right to use the permit [(Certificate 5662)] and that there is an existing right, [in] perpetuity, for Dynamic ... to use the permit [(Certificate 5662)]?" On August 17, 2015, Kyle Marionneaux responded to John Dale Powers that he did not "believe that the LPSC [would] allow that information to be included in the LPSC Certificate and, thus, seeking approval of those rights in the Change of Control docket would seem improper." Kyle Marionneaux further stated that "[o]peration under the authority of another carrier is accomplished at the LPSC through lease

5

agreements entered into by the parties and kept on file with the LPSC." Kyle Marionneaux attached to the response orders of the LPSC providing for leasing rules of common carriers, including an order discussing how the "farming out" of certificates was prohibited. In closing, Kyle Marionneaux stated that the "best manner to facilitate the operation by [SK Trucking] and Dynamic through Kent & Smith [Holdings] would be through an independent contractor arrangement which complies with the attached leasing rules." Kyle Marionneaux did not inform his client, Dynamic, of his opinion in this regard, and Dynamic was not aware that Marionneaux Kantrow was representing Kent & Smith Holdings or SK Trucking in a proceeding before the LPSC involving Certificate 5662 in which Dynamic held an interest. Further, Dynamic did not receive notice of and was not listed as a known party with an interest in any of the proceedings in LPSC docket number T-33737 regarding Certificate 5662. Further, at the September 2015 hearing before the LPSC, no testimony or other evidence was presented disclosing Dynamic's interest in Certificate 5662 pursuant to the Licensing Agreement or the Second Amendment.

On October 7, 2015, Gerard Smith advised Damon Wood that Kent & Smith Holdings owned Certificate 5662. In October 2015, Damon Wood encountered Kyle Marionneaux and Kara Kantrow at a restaurant in Baton Rouge and inquired about getting the Dynamic leases done; Damon Wood was told that he needed to confer with Gerard Smith about the leases and operating under Certificate 5662.

In March 2016, Kent & Smith Holdings filed a complaint with the LPSC alleging that Dynamic was using Certificate 5662 without authority. In connection therewith, LPSC issued Dynamic a set of Data Requests, which Marionneaux Kantrow forwarded to Dynamic. Upon receipt of the Data Requests, a telephone conversation took place between Brent Upton or Damon Wood and Kyle Marionneaux. Kyle Marionneaux advised him that Marionneaux Kantrow could

not handle the Data Requests and finalizing the leases between Dynamic and Kent & Smith Holdings because of a conflict of interest. Thereafter, Dynamic terminated its relationship with Marionneaux Kantrow, and Marionneaux Kantrow withdrew as counsel of record in the LPSC docket number T-33092 proceedings involving Dynamic's application for its own common carrier certificate.

In September 2016, Dynamic filed a complaint with the LPSC against SK Trucking and Kent & Smith Holdings alleging that because of the Licensing Agreement and the Second Amendment thereto, there was an encumbrance on Certificate 5662 in favor of Dynamic that was not recognized in LPSC docket number T-33737 and seeking, among other things to rescind the order in LPSC docket number T-33737 approving the transfer of Certificate 5662 from SK Trucking to Kent & Smith Holdings. This complaint was docketed as LPSC docket number T-34241. After various proceedings in that matter, including the denial of a motion for partial summary judgment filed by Kent & Smith Holdings, Dynamic's claims were eventually dismissed on the basis of prescription.

On March 2, 2017, Dynamic commenced this proceeding seeking damages against Marionneaux Kantrow based on legal malpractice. Therein, Dynamic asserted that Marionneaux Kantrow was liable to them because: Marionneaux Kantrow knew or should have known of the existence of the Licensing Agreement, and the Second Amendment thereto, between Dynamic and SK Trucking regarding Certificate 5662 prior to filing the Joint Application on behalf of Kent & Smith Holdings and SK Trucking and/or prior to finalizing the Joint Application at the hearing on September 25, 2015; Marionneaux Kantrow's representation of Kent & Smith Holdings and SK Trucking in the Joint Application proceedings in LPSC docket number T-33737 was a conflict of interest because those proceedings were adverse to the interests of Dynamic in Certificate 5662; Marionneaux Kantrow's failure to recognize and resolve the conflict of interest between Dynamic, SK

7

Trucking, and Kent & Smith Holdings constituted a breach of duties of competence, diligence, and honesty that they owed to Dynamic, as well as a breach of the fiduciary duties owed to each of their clients. Dynamic further claimed that as a result of Marionneaux Kantrow's actions (or inactions) Dynamic suffered and continues to suffer economic losses, including but not limited to lost revenues, increased cost of business, and legal fees associated with seeking to rescind the transfer of Certificate 5662.

Thereafter, Dynamic filed a motion for partial summary judgment on the issue of Marionneaux Kantrow's liability. Marionneaux Kantrow responded by filing its own motion for summary judgment seeking the dismissal of all of Dynamic's claims against them, arguing that the undisputed material facts show that Dynamic could not recover from Marionneaux Kantrow as a matter of law because: the Licensing Agreement providing for Dynamic's right to use SK Trucking's Certificate 5662 in perpetuity was "illegal" under the LPSC's rules, *i.e.*, Kyle Marionneaux's opinion that the Licensing Agreement was improper was correct as a matter of law; Marionneaux Kantrow, upon learning of the Licensing Agreement after the Asset Purchase Agreement had been executed, was prohibited from disclosing that information to Dynamic under Rule 1.8(b) of the Rules of Professional Conduct; and Dynamic was barred from recovering from the defendants based upon its own unclean hands in entering into an illegal agreement that was against public policy.

After a hearing on the motions for summary judgment, the trial court signed a judgment on August 7, 2020, in favor of Marionneaux Kantrow and against Dynamic, which denied the motion for partial summary judgment filed by Dynamic, granted the motion for summary judgment filed by Marionneaux Kantrow, and dismissed all of Dynamic's claims against Marionneaux Kantrow with prejudice. From this judgment, Dynamic has appealed, challenging the trial

8

court's judgment insofar as it granted Marionneaux Kantrow's motion for summary judgment and dismissed Dynamic's claims against Marionneaux Kantrow.[1]

## LAW AND DISCUSSION

*Summary Judgment Law*

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So.3d 16, 21, writ denied, 2018-1397 (La. 12/3/18), 257 So.3d 194. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

On a motion for summary judgment, the burden of proof is on the party filing the motion. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover need only point out to the court, through its supporting documents, the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). See also La. C.C.P. art. 966, Comments-2015, Comment (j). Once the motion for summary judgment has been properly supported by the moving party, *i.e.*, the mover has established the material facts through its supporting documents and the mover has made a *prima facie* showing that the motion should be granted, the burden then shifts to the non-moving party to produce factual support, through the use of supporting documents in opposition to the motion, of the existence of a genuine

---

[1] On appeal, Dynamic has not challenged the judgment insofar as it denied Dynamic's motion for partial summary judgment.

issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). If the non-moving party fails to produce factual support in its opposition sufficient to establish this burden, the motion should be granted. See **Babin v. Winn-Dixie Louisiana, Inc.**, 2000-0078 (La. 6/30/00), 764 So.2d 37, 40.

Appellate courts review evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. **Georgia-Pacific Consumer Operations, LLC**, 255 So.3d at 22. In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765 *(per curiam)*; **Penn v. CarePoint Partners of Louisiana, L.L.C.**, 2014-1621 (La. App. 1st Cir. 7/30/15), 181 So.3d 26, 30.

A "genuine" issue is a triable issue, which means an issue on which reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. **Kasem v. State Farm Fire & Cas. Co.**, 2016-0217 (La. App. 1st Cir. 2/10/17), 212 So.3d 6, 13. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. **Collins v. Franciscan Missionaries of Our Lady Health System, Inc.**, 2019-0577 (La. App. 1st Cir. 2/21/20), 298 So.3d 191, 195, writ denied, 2020-0480 (La. 6/22/20), 297 So.3d 773. Simply put, a "material" fact is one that would matter at a trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.

10

**Collins**, 298 So.3d at 195. Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Id.*

*Legal Malpractice*

A legal malpractice plaintiff must prove three different elements to successfully bring a legal malpractice action: (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney or professional impropriety in the attorney's relationship with the client; and (3) loss caused by that negligence or misconduct. **Teague v. St. Paul Fire and Marine Ins. Co.,** 2007-1384 (La. 2/1/08), 974 So.2d 1266, 1272; **Costello v. Hardy,** 2003-1146 (La. 1/21/04), 864 So.2d 129, 138; **Leonard v. Reeves,** 2011-1009 (La. App. 1st Cir. 1/12/12), 82 So.3d 1250, 1257. Failure to prove any one of these elements is fatal to the plaintiff's claim. See **Costello,** 864 So.2d at 138 n.7.

Proof of the violation of an ethical rule by an attorney, standing alone, does not constitute actionable legal malpractice *per se* or proof of factual causation. **Leonard,** 82 So.3d at 1257. See also **Teague v. St. Paul Fire and Marine Ins. Co.,** 2006-1266 (La. App. 1st Cir. 4/7/09), 10 So.3d 806, 825, writ denied, 2009-1030 (La. 6/7/09), 10 So.3d 722. However, the Rules of Professional Conduct may be relevant in defining the legal standard of care, which may vary depending upon the particular circumstances of the relationship. *Id.*

The Rules of Professional Conduct are set forth in Article 16 of the Articles of Incorporation of the Louisiana State Bar Association. Rule 1.6(a) provides, in pertinent part that "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, [or] the disclosure is impliedly authorized in order to carry out the representation ...."

Additionally, Rule 1.7 provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

11

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Lastly, Rule 1.8(b) provides that "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules."

*Discussion*

Herein, there is no disputed issue of fact that an attorney-client relationship existed between Dynamic and Marionneaux Kantrow. Therefore, in order for Dynamic to succeed in this malpractice action against Marionneaux Kantrow, Dynamic has the burden of proving that there was a professional impropriety by Marionneaux Kantrow in its relationship with Dynamic or that Marionneaux Kantrow negligently represented Dynamic, and that Dynamic sustained or suffered a loss due to Marionneaux Kantrow's negligence or misconduct. In Marionneaux Kantrow's motion for summary judgment, it contends that: there is an absence of factual support for Dynamic's claim that it suffered a loss because the Licensing Agreement between SK Trucking and Dynamic providing for Dynamic's right to

12

use Certificate 5662 was an "illegal" agreement under the LPSC's rules; Marionneaux Kantrow, upon learning of the Licensing Agreement after the Asset Purchase Agreement had been executed, was prohibited from disclosing any information to Dynamic pursuant to Rule 1.8(b) of the Rules of Professional Conduct; and Dynamic was barred from recovering from Marionneaux Kantrow based upon its own unclean hands in entering into an illegal agreement that was against public policy. In support of its motion for summary judgment, Marionneaux Kantrow relied on: the affidavit of Kyle Marionneaux, with various exhibits attached thereto; the affidavit of Kara Kantrow, with various exhibits attached thereto; a decision of the LPSC in docket number T-34241 (the complaint of Dynamic against SK Trucking and Kent & Smith Holdings);[2] an affidavit of Brent Upton; and copies of various rules and regulations governing the leasing of motor vehicles by authorized carriers, including Order 9901 (Amended) of the LPSC.[3]

The affidavits of Kyle Marionneaux and Kara Kantrow establish much of the undisputed factual background of this case, set forth hereinabove, which was also set forth in Dynamic's petition. The affidavits of Kyle Marionneaux and Kara

---

[2] Louisiana Code of Civil Procedure article 966(A)(4) provides that "[t]he only documents that may be filed in support of or in opposition to the motion [for summary judgment] are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." Additionally, La. C.C.P. art. 966(D)(2) sets forth that the trial court "may consider only those documents filed in support of or in opposition to the motion for summary judgment and *shall consider* any documents *to which no objection is made*." (Emphasis added.) Louisiana Code of Civil Procedure article 966(D)(2) further states that "[a]ny objection to a document shall be raised in a timely filed opposition or reply memorandum."

We note that Dynamic objected to this document pursuant to La. C.C.P. art. 966(D)(2); however, the record does not reveal the trial court's ruling on the objection. Therefore, we deem the trial court's silence as a denial or rejection of Dynamic's objection. See **M.J. Farms Ltd. v. Exxon Mobil Corp.**, 2007-2371 (La. 7/1/08), 998 So.2d 16, 26. Dynamic has not challenged this ruling on appeal. We also note that Dynamic, in its opposition to Marionneaux Kantrow's motion for summary judgment, relied on a decision rendered in the same LPSC proceeding (LPSC docket number T-34241). Furthermore, the trial court was authorized to take judicial notice of any rules or decisions of the LPSC pursuant to La. C.E. art. 202(B)(e).

[3] Dynamic did not object to these documents pursuant to La. C.C.P. art. 966(D)(2); therefore, the trial court was required to consider the documents in ruling on the motion for summary judgment. See also footnote 1.

Kantrow establish that prior to December 23, 2013, Dynamic retained Marionneaux Kantrow to assist Dynamic in the filing of an application with the LPSC to obtain a common carrier certificate to allow Dynamic to haul LPSC regulated waste within the State of Louisiana, and that in January 2014, Marionneaux Kantrow filed an application for certification on behalf of Dynamic, which was assigned LPSC docket number T-33092. Their affidavits further establish that prior to July 24, 2015, Kent & Smith Holdings retained Marionneaux Kantrow to draft and negotiate an Asset Purchase Agreement on behalf of Kent & Smith Holdings by which Kent & Smith Holdings would acquire from SK Trucking all of its right, title, and interest in Certificate 5662. Thereafter, Kent & Smith Holdings and SK Trucking retained Marionneaux Kantrow to file a Joint Application on behalf of both Kent & Smith Holdings and SK Trucking with the LPSC seeking approval of the transfer of Certificate 5662 from SK Trucking to Kent & Smith Holdings, and that on July 28, 2015, Marionneaux Kantrow filed the Joint Application, which was assigned LPSC docket number T-33737.

Pertinent to the issues raised in Marionneaux Kantrow's motion for summary judgment, the affidavit of Kyle Marionneaux sets forth that Dynamic never informed him of the Licensing Agreement between Dynamic and SK Trucking and that the July 28, 2015 email to him from John Dale Powers was the first time that he became aware of the Licensing Agreement, the First Amendment, and the Second Amendment between Dynamic and SK Trucking. Kyle Marionneaux stated that since he was not aware of the Licensing Agreement, he neither drafted nor provided advice to Dynamic regarding the Licensing Agreement when Dynamic entered into the Licensing Agreement, the First Amendment, and the Second Amendment thereto. Kyle Marionneaux further stated that the Licensing Agreement between Dynamic and SK Trucking was not filed with the LPSC prior to 2016 and that the LPSC did not approve Dynamic

14

operating under Certificate 5662 pursuant to the Licensing Agreement. Kyle Marionneaux further stated that his opinion was and continues to be that the Licensing Agreement between Dynamic and SK Trucking was an illegal "farming out" of Certificate 5662 from SK Trucking to Dynamic, which the LPSC rules and regulations prohibit; that the LPSC would not have enforced or recognized the Licensing Agreement between Dynamic and SK Trucking; and that it would have been improper to seek approval of the Licensing Agreement in the Joint Application for change of control of Certificate 5662 filed by SK Trucking and Kent & Smith Holdings.

According to the affidavit of Kara Kantrow, on November 19, 2013, in response to an inquiry by Damon Wood, she forwarded him a copy of the LPSC's leasing rules. She stated that on February 19, 2014, in preparation for the hearing in LPSC docket number T-33092 (Dynamic's application for its own common carrier license), she sent an email to Damon Wood requesting various documents, including "[c]urrent lease agreements between Dynamic and another company for services in Louisiana." She further stated that in response to this inquiry, Dynamic did not inform her that it had entered into the Licensing Agreement with SK Trucking. Kara Kantrow acknowledged that on July 24, 2014, she attended the deposition of Scott Feske in LPSC docket number T-33092, but stated that Scott Feske testified "to [her] surprise" that Dynamic hauled regulated waste through a lease with SK Trucking that was on file with the LPSC. Kara Kantrow stated that after Scott Feske's deposition, she sent an email to Damon Wood asking him about the lease between Dynamic and SK Trucking, advising him that a staff attorney at the LPSC had said that a lease between Dynamic and SK Trucking was never filed, and inquiring as to whether Dynamic had any record of the lease being filed. Kara Kantrow also stated that, thereafter, she received an email from a LPSC staff attorney providing a list of the active leases on file with the LPSC pertaining to SK

15

Trucking; she then received a subsequent email from the same LPSC staff attorney stating that Dynamic did not have an LPSC number and was operating without authority. Kara Kantrow set forth that as of July 24, 2014, she had no knowledge that Dynamic had entered into the Licensing Agreement with SK Trucking.

Kara Kantrow also stated that on January 9, 2015, she sent an email to Damon Wood in response to an inquiry from him regarding a contract carrier permit. In the email, she specifically told Damon Wood that any contracts had to be on file with the LPSC and that "a carrier [would be] prohibited from 'farming out' its certificate or using one of its contracts with a brokerage company." Kara Kantrow further stated that as of January 9, 2015, she had no knowledge that Dynamic had entered into the Licensing Agreement with SK Trucking.

Kara Kantrow stated that she was unaware and was never informed by anyone of the existence of the Licensing Agreement prior to reading the July 28, 2015 email from John Dale Powers to Kyle Marionneaux, as she had not been provided with or made aware of those agreements before that date. Since Kara Kantrow was not aware of the Licensing Agreement, she did not draft nor provide advice to Dynamic regarding the Licensing Agreement when Dynamic entered into the Licensing Agreement, the First Amendment, and the Second Amendment to same. She stated that the Licensing Agreement between Dynamic and SK Trucking was not filed or recorded with the LPSC, and the LPSC did not approve Dynamic operating under Certificate 5662 pursuant to the Licensing Agreement. Lastly, Kara Kantrow stated that her opinion was, and continues to be that the Licensing Agreement between Dynamic and SK Trucking was an illegal farming out of Certificate 5662 from SK Trucking to Dynamic that the LPSC rules and regulations prohibit; that the LPSC would not have enforced or recognized Licensing Agreement between Dynamic and SK Trucking; and that it would have been improper to seek approval of the Licensing Agreement in the Joint

16

Application for change of control of Certificate 5662 filed by SK Trucking and Kent & Smith Holdings.

The affidavit of Brent Upton established that he understood that Dynamic was prohibited from transporting non-hazardous oilfield waste, non-hazardous industrial solid waste, and hazardous waste unless Dynamic was granted a LPSC common carrier certificate or contract carrier permit or Dynamic leased its trucks to a LPSC-authorized carrier pursuant to a lease agreement in compliance with LPSC leasing rules. He further stated that as of that date, April 18, 2016, he understood that the December 2013 Leasing Agreement, and the Amendments thereto, between Dynamic and SK Trucking had to be approved by the LPSC prior to Dynamic being authorized to transport waste under Certificate 5662, then held by SK Trucking.

As to the LPSC decision in LPSC docket number T-34241 (complaint of Dynamic against SK Trucking and Kent & Smith Holdings), which is dated December 6, 2018, the LPSC determined that Dynamic's claims against SK Trucking and Kent & Smith Holdings were prescribed, because the complaint was not filed within one year of September 15, 2015, the date of the hearing on the Joint Application. The LPSC also determined that while Dynamic was certainly affected by the decision in LSPC docket number T-33737, since the LPSC never approved the Licensing Agreement, Dynamic did not have rights in Certificate 5662 such that it needed to be joined as a necessary party for just adjudication, as provided by La. C.C.P. art. 641. The LPSC also determined that *contra non valentum* did not apply to interrupt prescription on Dynamic's claims against SK Trucking and Kent & Smith Holdings. In making this determination, the LPSC found as follows:

> Further, it should be noted that knowledge of an attorney is imputable to his client. Marionneaux Kantrow had knowledge of the Licensing Agreement and the Second Amendment to the Licensing Agreement

17

on July 28, 2015 and had knowledge of [LPSC docket number] T-33737 on July 28, 201[5[4]] the date the Joint Application was filed. At that time, Marionneaux Kantrow was also the counsel of record for [Dynamic] at the [LPSC]. Consequently, the knowledge Marionneaux Kantrow had of the [Licensing] Agreement[ and Second Amendment thereto] and [LPSC docket number] T-33737 is imputed to [Dynamic.] *Even if there was improper representation or misconduct by an attorney*, the courts have held that it does not provide a legally recognized basis for granting an action in nullity or denying an exception of prescription.

(Emphasis added. Footnotes omitted.)

Lastly, with regard to the various rules and regulations governing the leasing of motor vehicles by authorized carriers, specifically Order 9901 (Amended) of the LPSC, provides, in pertinent part, that "[t]he practice of 'farming out' or leasing of a certificate or permit by an authorized carrier to an unauthorized person or carrier under the guise of a motor vehicular lease is expressly forbidden and prohibited." Order 9901 (Amended) further provides that all leases "shall be in writing, properly executed in quadruplicate" and that one copy "must be immediately filed with the [LPSC]."

In opposition to Marionneaux Kantrow's motion for summary judgment, Dynamic contends that there are material issues of fact as to Marionneaux Kantrow's conflict of interest, its negligence, and resultant malpractice, and further as to Dynamic's significant losses as a result of Marionneaux Kantrow's malpractice. In support of its opposition to Marionneaux Kantrow's motion for summary judgment, Dynamic relied on a decision from an administrative hearing in LPSC docket number T-34241 (the complaint of Dynamic against SK Trucking and Kent & Smith Holdings); an affidavit from its expert, Basile Uddo; and an affidavit from Damon Wood.

---

[4] The LPSC ruling action stated "July 28, 2018"; however, this was an obvious typographical error because the LPSC had already noted in its decision that the filing date of the Joint Application was July 28, 2015.

18

The opinion in LPSC docket number T-34241, which was dated October 13, 2017, was from an administrative hearing before an administrative law judge ("ALJ") on a motion for partial summary judgment filed by Kent & Smith Holdings. Kent & Smith Holdings sought a partial summary judgment seeking to have the LPSC deny Dynamic's request to declare that Certificate 5662 was encumbered by the Licensing Agreement and Second Amendment and that SK Trucking was prohibited from assigning and/or transferring either, including the right to use in perpetuity Certificate 5662 to any party, including Kent & Smith Holdings. As Marionneaux Kantrow argues in this case, Kent & Smith Holdings argued in those proceedings that the Licensing Agreement and the Second Amendment was a "farming out" of Certificate 5662, which was in violation of LPSC rules and orders; thus, Kent & Smith Holdings claimed that Licensing Agreement and the Second Amendment were absolutely null contracts that did not create any encumbrances on Certificate 5662. Kent and Smith Holdings also argued that the Licensing Agreement and the Second Amendment were not leases; therefore, the LPSC orders, rules and regulations pertaining to leases did not apply.

In denying the motion for partial summary judgment, the ALJ was not persuaded by Kent & Smith Holdings' arguments. The ALJ noted that La. R.S. 45:166(B)[5] permitted the lease of a certificate and that Order 9901 (Amended) only prohibited leases that are confected under the guise of a motor vehicular lease. The ALJ found that Kent & Smith Holdings had not shown that the Licensing Agreement and Second Amendment were confected under the guise of a motor

---

[5] Louisiana Revised Statutes 45:166(B) provides:

> No certificate or permit shall be sold, leased or transferred, nor shall such certificate or permit be used by any other than the person, firm or corporation to whom it was originally granted, unless and until it be shown by a clear preponderance and to the satisfaction of the commission that the owner thereof shall have for a period of six consecutive months, immediately prior to the lease transfer or use thereof by one other than the owner, substantially operated all rights under said certificate or permit; or that the failure to so operate was due to bankruptcy, receivership, or other legal proceedings, or to other causes beyond his or its control.

vehicle lease. Moreover, the ALJ determined that there was "insufficient evidence in the record from which a determination can be reached as to the legal nature and effect of the [Licensing Agreement and Second Amendment.]" Thus, the ALJ concluded that there were "remaining genuine issues of material fact as to the legal nature and effects of the [Licensing Agreement and Second Amendment;]" thus, the motion for summary judgment in that matter was denied.

According to the affidavit of Basile Uddo, he has significant expertise in the rules of professional conduct, lawyer ethics, and the standard of care for lawyers. Basile Uddo opined that Marionneaux Kantrow had an attorney-client relationship with Dynamic from late 2013, which included matters that would become not only elated to, but adverse to SK Trucking and Kent & Smith Holdings. He believed that Marionneaux Kantrow learned that Dynamic was using Certificate 5662 in July 2014; nonetheless, approximately a year later, Marionneaux Kantrow was retained by Kent & Smith Holdings to negotiate and draft the Asset Purchase Agreement to acquire from SK Trucking all of SK Trucking's assets, including Certificate 5662, and thereafter, to file a Joint Application to transfer Certificate 5662 from SK Trucking to Kent & Smith Holdings. Basile Uddo opined that, since Marionneaux Kantrow was still representing Dynamic in Dynamic's application for its own common carrier certificate, there was a clear concurrent conflict of interest between Dynamic and Kent & Smith Holdings, and that Marionneaux Kantrow failed to adhere to the standard of care and the Rules of Professional Conduct in dealing with this conflict of interest. He also opined that the substandard conduct by Marionneaux Kantrow was exacerbated by the fact that Marionneaux Kantrow was specifically made aware of Dynamic's interest in Certificate 5662 in connection with the Joint Application, including the Licensing Agreement and amendments thereto, but took no action to properly disclose the concurrent conflict and to seek informed consent from both clients prior to

proceeding in the Joint Application matter, even though the conflict was likely not waivable. Basile Uddo further opined that Marionneaux Kantrow's representation of Kent & Smith Holdings in the Joint Application was directly adverse to Dynamic's interests and contrary to the applicable standard of care and the Rules of Professional Conduct. Basile Uddo stated that Marionneaux Kantrow's opinion that the Licensing Agreement was an unenforceable "farming out" of Certificate 5662, which was not communicated at all to Dynamic, did not resolve the conflict of interest. Basile Uddo further stated that Marionneaux Kantrow had an even greater duty to provide such information to Dynamic as part of an informed consent disclosure, since Marionneaux Kantrow was taking a position that was not only directly adverse to Dynamic, but it was also a position with very serious consequences. In that regard, Basile Uddo opined that Marionneaux Kantrow acted contrary to the applicable standard of care and the Rules of Professional Conduct.

Basile Uddo believed that the fact that the LPSC denied Kent & Smith Holdings' motion for partial summary judgment on the "farming out" legal issue (in LPSC docket number T-34241) compounded Marionneaux Kantrow's breach in not disclosing to and discussing with Dynamic their conflict, because Dynamic was entitled to Marionneaux Kantrow's vigorous and loyal representation, including advancing favorable legal positions and resisting unfavorable legal positions, unless such action would be frivolous. In other words, Dynamic was entitled to have its counsel resist the argument that the Licensing Agreement and Second Amendment were not enforceable, which was clearly not a frivolous position given the ALJ's ruling on the motion for partial summary judgment. Accordingly, Basile Uddo opined that Marionneaux Kantrow acted contrary to the applicable standard of care and the Rules of Professional Conduct. Lastly, Basile Uddo stated that Marionneaux Kantrow continued to represent Dynamic and Kent

21

& Smith Holdings even after assisting Kent & Smith Holdings in getting Certificate 5662 transferred without protecting Dynamic, which was an additional concurrent conflict that was contrary to the applicable standard of care and the Rules of Professional Conduct.

According to the affidavit of Damon Wood, individually and as managing member of Dynamic, Dynamic formed an attorney-client relationship with Marionneaux Kantrow in late 2013 regarding matters related to SK Trucking and Kent & Smith Holdings. Damon Wood stated that as managing member of Dynamic, he personally reviewed invoices for legal fees from Marionneaux Kantrow and tendered payments for same to Marionneaux Kantrow on behalf of Dynamic. Damon Wood also stated that on March 14, 2016, Dynamic was informed—for the very first time—that Marionneaux Kantrow had been involved with the transfer of Certificate 5662 from SK Trucking to Kent & Smith Holdings. Mr. Wood attested that between December 2013 and March 2016, Dynamic paid Marionneaux Kantrow substantial fees for legal representation related to Certificate 5662, and that during that time period, Marionneaux Kantrow never informed Dynamic they were also representing Kent & Smith Holdings and had been billing Dynamic for work while they were concurrently working on behalf of Kent & Smith Holding and against Dynamic relating to Certificate 5662. Damon Wood further stated that had Dynamic been made aware of Marionneaux Kantrow's conflict of interest, Dynamic would have terminated Marionneaux Kantrow's representation with regard to Certificate 5662 based on the clear conflict of interest and would not have paid legal fees to Marionneaux Kantrow for work done relating to Certificate 5662.

Based on our *de novo* review of the record, we find there are genuine issues of material fact that preclude summary judgment in this matter. More specifically, we find the documents offered in support of and in opposition to Marionneaux

22

Kantrow's motion for summary judgment establish that there are genuine issues of material fact as to whether there was professional impropriety in Marionneaux Kantrow's relationship with Dynamic and whether Dynamic sustained a loss as a result of Marionneaux Kantrow's alleged misconduct. The documents establish that Marionneaux Kantrow was first retained by Dynamic and that it was subsequently retained by Kent & Smith Holdings, and then SK Trucking. As of the end of 2013, Dynamic claimed to have obtained an interest in Certificate 5662 from SK Trucking by virtue of the Licensing Agreement and Second Amendment, whereas Kent & Smith Holdings claimed to have obtained full ownership (unencumbered) of Certificate 5662 from SK Trucking. Thus, there is an issue of fact as to whether there existed a concurrent conflict of interest for Marionneaux Kantrow because its subsequent representation of Kent & Smith Holdings (and SK Trucking) was adverse to its other client, Dynamic.

While the documents establish that Marionneaux Kantrow did not have actual knowledge of Dynamic's interest in Certificate 5662 or the Licensing Agreement and Second Amendment at the time it was retained to represent Kent & Smith Holdings, the documents establish that there are issues of fact as to when Marionneaux Kantrow knew or should have known of Dynamic's alleged interest in Certificate 5662. Nevertheless, the documents undisputedly establish that Marionneaux Kantrow obtained actual knowledge of Dynamic's claim to an interest in Certificate 5662 and of the Licensing Agreement, the First Amendment, and the Second Amendment when John Dale Powers sent an email to Kyle Marionneaux on July 28, 2015, the same date that the Joint Application to transfer Certificate 5662 from SK Trucking to Kent & Smith Holdings was filed by Marionneaux Kantrow. Notwithstanding this actual knowledge, the documents further establish that Marionneaux Kantrow continued to represent Kent & Smith Holdings and SK Trucking in that proceeding before the LPSC and that it did not

notify Dynamic of said representation. While Marionneaux Kantrow was of the opinion that Dynamic's interest in Certificate 5662 did not need to be reflected or included in the transfer or even its opinion that Dynamic's interest was unenforceable because it was an illegal "farming out" of Certificate 5662, Marionneaux Kantrow never communicated such to its client, Dynamic. Although Marionneaux Kantrow also contends that it was precluded from disclosing such information to Dynamic under Rule 1.8(b) of the Rules of Professional Conduct, it was nonetheless required to disclose the existence of the concurrent conflict of interest. Thus, we find genuine issues of material fact as to whether there was professional impropriety in Marionneaux Kantrow's relationship with Dynamic.

As to whether Dynamic sustained a loss or losses from the alleged misconduct of Marionneaux Kantrow, the documents offered establish that with regard to such losses Dynamic has incurred and paid legal fees and other expenses, particularly with regard to Certificate 5662. We recognize that Marionneaux Kantrow continues to maintain its opinion that Dynamic sustained no loss and that it had "unclean hands" because the Licensing Agreement and Second Amendment thereto was an illegal "farming out" of Certificate 5662 because it is prohibited by the LPSC rules and orders, i.e., Order 9901 (Amended). However, there has been no determination by the LPSC that the Licensing Agreement and Second Amendment thereto was an illegal "farming out" of Certificate 5662. Like the ALJ in LPSC docket number T-34241, we find the documents offered on the motion for summary judgment are insufficient to make a determination as to the legal nature and effect of the Licensing Agreement and Second Amendment. As previously set forth, Order 9901 (Amended), provides that "the practice of 'farming out' or leasing of a certificate or permit by an authorized carrier to an unauthorized person or carrier under the guise of a motor vehicular lease is expressly forbidden and prohibited." Thus, Order 9901 (Amended) prohibits leases when they are

24

confected under the guise of a motor vehicular lease. Louisiana Revised Statutes 45:166(B) states that no certificate or permit shall be leased, nor used by any other person than to whom it was originally granted, "unless and until it be shown by a clear preponderance and to the satisfaction of the [LPSC] that the owner" substantially operated under the certificate or permit for six consecutive months immediately prior to the lease transfer. Thus, La. R.S. 45:166(B) permits the lease of a certificate, upon application to the LPSC and a showing that the certificate was used prior to the lease transfer.

As the ALJ noted in denying Kent & Smith Holdings' motion for partial summary judgment in LPSC docket number T-34241, the prohibition in Order 9901 (Amended) indicates that the requirements of 45:166(B) cannot be avoided through the use of a motor vehicle lease and these provisions work together to ensure that carriers do not avoid seeking the LPSC's approval for the lease of a certificate by confecting a lease under the guise of a motor vehicle lease. Since La. R.S. 45:166(B) permits the lease of a certificate under certain conditions and Order 9901 (Amended) only prohibits leases that are confected under the guise of a motor vehicular lease, the documents offered fail to show that the Licensing Agreement and Second Amendment were confected under the guise of a motor vehicle lease and do not exclude the possibility of Dynamic's interest in Certificate 5662 falling under the provisions of La. R.S. 45:166(B). While the documents establish that the Licensing Agreement and the Second Amendment were not filed with or approved by the LPSC until Dynamic complained to the LPSC about the transfer of Certificate 5662 from SK Trucking to Kent & Smith Holdings, the LPSC's subsequent decision in LSPC docket number T-34241 (on the issue of prescription) suggests the possibility that if Dynamic's claims therein had not been prescribed, Dynamic might have had an interest in Certificate 5662 had those agreements been approved by the LPSC, i.e., LPSC "approval would have been needed prior to

25

[Dynamic] being granted the interest in the certificate that it claims to have...." Thus, we find genuine issues of material fact as to whether Dynamic sustained a loss due to Marionneaux Kantrow's alleged misconduct.

Because we find there are genuine issues of material fact exist herein, Marionneaux Kantrow was not entitled to summary judgment or to the dismissal of Dynamic's claims against it. Therefore, the trial court's decision to grant Marionneaux Kantrow's motion for summary judgment and to dismiss Dynamic's claims against Marionneaux Kantrow must be reversed.

## CONCLUSION

For all of the above and foregoing reasons, that portion of the August 7, 2020 judgment of the trial court granting the motion for summary judgment filed by the defendants, Kyle Marionneaux, Kara Kantrow, Marionneaux Kantrow, LLC and Continental Casualty Company, and dismissing the claims of the plaintiff, Dynamic Environmental Services, against the defendants is reversed. The judgment is affirmed in all other respects and this matter is remanded for further proceedings. All costs of this appeal are assessed to the defendants, Kyle Marionneaux, Kara Kantrow, Marionneaux Kantrow, LLC and Continental Casualty Company.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**